JOHN SROKA, p. a. *vs.* FRED F. HALLIDAY *et al.*

JUNE 7, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)  Negligence.  Break of Causal Connection.  Fireworks.*

As the result of the negligence of defendant, a bomb which had been discharged in a display of fireworks, fell unexploded some six hundred feet from the place of discharge, where a boy five years of age picked it up, and brought it to the plaintiff who was about six and a half years old and another boy about seven years old. The boys knew just enough about it to suppose that the fuse was intended to be lighted, but were totally ignorant of the effect which would be produced. After playing with it for some time the seven year old boy lighted the fuse and it exploded seriously injuring plaintiff. *Held* that the act of the boy in lighting the fuse

was not as a matter of law such intervention of a responsible third party as to break the causal connection between the negligence of defendant and the damage to plaintiff, and the question of defendant's liability was properly left to the jury.

TRESPASS ON THE CASE for negligence.    Heard on exceptions of defendants and overruled.

PARKHURST, C. J.    The plaintiff, by his father and next friend, brought this action to recover for injuries sustained by him on the 12th of July, 1912, through the explosion of a bomb which was sent into the air as part of the Fourth of July celebration of that year.

The plaintiff's claim is that by reason of the negligence of the contractors employed by the defendants having charge of said celebration, the bomb in question failed to explode in the air, as it was intended, but was thrown across the river and landed upon the property occupied by the plaintiff's father; that eight days later, upon the 12th of July, 1912, the plaintiff, with two companions, was playing in the yard of the plaintiff's father; that one of the boys found the unexploded bomb; that they procured a match, lit the bomb while it was in the plaintiff's hands, and that it exploded, causing the injuries for which the action was brought.

The plaintiff, John Sroka, at the time of the injury was a child about six and one-half years of age and lived with his parents at 321 North Main street, in the city of Pawtucket—North Main street being on the west side of the Blackstone River, some 600 feet distant from Goff's Lot, so-called, which is on the east side of said river, upon which lot a display of fireworks of varied character, including numerous aerial bombs, was set off during the day and evening of July 4, 1912.    The plaintiff, John Sroka, received the injuries complained of on July 12, 1912, while at play in his own yard at 321 North Main street, with two other children, one of them about seven years old, the other about four or five years old.    The youngest child found there an unexploded bomb and brought it to the others and they played with it.    They found a match in the yard which was applied to this bomb while in the hands of the plaintiff, it

then and there exploded and severely injured the plaintiff, blowing off the palms of both hands and all the fingers except the index finger of the right hand and the little finger and the next finger on the left hand, breaking both arms, and causing a severe injury in the right knee, a slighter injury to the left knee and causing severe powder burns to. the face and body.

Certain of the defendants were appointed a committee by the city council of the city of Pawtucket, and others were appointed on behalf of the Board of Trade, and the two joined as one committee having charge of the celebration.

The case was tried in the Superior Court in April, 1915, and then resulted in the direction of a verdict for the defendants on the grounds, in substance, that the defendants, being members of a committee appointed by the city council, were not liable, and also that the fireworks display was let to independent contractors and the injury was due to their negligence; the case then came before this court on plaintiff's exceptions based on these rulings, the exceptions were sustained and the case was sent back for a new trial. (See *Sroka* v. *Halliday*, 39 R. I. 119, to which reference is had for a further statement of the facts in evidence in this case, which differ in no essential respect from the facts then in evidence.)

In our opinion in 39 R. I. 119, referred to above, we passed upon all the questions at that time raised before the court as to the liability of the defendants as being persons responsible for the negligence of the Fireworks Co., which we held to be their agent and subject to their control; and as to the nature and quality of the responsibility of the defendants and as to their duties to the public in regard to the degree of care required in carrying on a dangerous display involving the use and firing of explosive bombs; and held that there was evidence of actionable negligence on the part of the defendants which should have been submitted to the jury.

A new trial was had before a judge of the Superior Court sitting with a jury, April 19–May 2, 1917, and resulted in a

verdict for the plaintiff for $17,000. At the conclusion of the evidence at this latter trial defendants moved for direction of a verdict in their behalf, the motion was denied; the defendants excepted, and duly filed and prosecuted a bill of exceptions (without moving for a new trial); the case is now before this court on defendants' bill of exceptions.

Although defendants took numerous exceptions during the progress of the trial, they are now urging before this court only one of them, viz.: their exception to the refusal of the trial judge to direct the jury to return a verdict in favor of the defendants at the conclusion of all the testimony; the basis of defendants' claim is stated in their brief as follows: "The principal ground which is urged by these defendants at this time as a ground for the direction of a verdict in their favor is that regardless of the defendants' negligence, such negligence was not the proximate cause of the accident, but that the chain of causation was broken by the intervention of the action of another, namely, by the action of the boy who found the bomb, and applied the fire to it. This brief will be confined to that one question."

Otherwise stated the defendants' contention is that in view of all the evidence the trial judge should have found as a matter of law that the act of a seven years old boy in setting off an explosive bomb with a lighted match while the bomb was in the hands of the plaintiff was such an "intervention of a responsible third party" as to break the causal connection between the negligence of the defendants and the damage to the plaintiff, "for the general reason that causal connection between negligence and damage is broken by the interposition of independent responsible human action;" and the defendants cite in support of that contention the case of *Mahogany* v. *Ward*, 16 R. I. 479, 481, from which the words above quoted are taken, and are therein quoted from Wharton on Negligence, § 134. In that quotation it is to be noted that the word *"responsible"* is used as applying to the person whose independent act breaks the causal connection. In *Mahogany* v. *Ward*, the

plaintiff, a traveler on a public highway, sued the town treasurer of Middletown, R. I., for injuries resulting to her from being forced to drive outside the traveled portion of the way by the negligent conduct of a man of mature years also a traveler, who refused to turn out so that she could pass him upon the traveled portion of the road; she collided with a post set in the untraveled portion of the road, and the gist of the decision is that she could not recover against the town, but could recover against the man whose intervening negligence forced her to go out of the way to avoid collision with him. It is also to be noted in that case, that the court draws the distinction between the principle there applied, as relating to the interposition of a *"responsible"* third party, and the principle which applies in cases where the intervening act is that of an irresponsible person, like a child of tender years, in the following words (p. 483): "The rule above stated is subject to the qualification that, if the intervening act is such as might reasonably have been anticipated as the natural or probable result of the original negligence, the original negligence will, notwithstanding such intervening act, be regarded as the proximate cause of the injury, and will render the person guilty of it chargeable," citing among other authorities *Lane* v. *Atlantic Works,* 111 Mass. 136, 139, 141; and *Dixon* v. *Bell,* 5 M. & S. 198, 199, to which special attention is called, as they are cases where recovery was sought for injuries to an infant and where the immediate act which brought about the injury was that of an infant, and where the question to be determined was whether such intervening act of a minor was of such a character as to "insulate" the negligence of the defendant (*Mahogany* v. *Ward,* supra, p. 481), or in other words such as to be in itself the proximate cause of the injury so as to exonerate the defendant, or whether the immediate act of the infant was such an act "as might reasonably have been anticipated as the natural or probable result of the original negligence" (*Mahogany* v. *Ward, supra,* p. 483).

In the case of *Salisbury* v. *Crudale,* 41 R. I. 33, decided January 16, 1918, this court had occasion to consider essentially the same question here raised, viz.: whether the act of a minor about twelve years old, who fired a gun, which had been negligently left loaded by his father (the defendant) where the minor son had access to it, and wounded the plaintiff, was such an independent intervening act of a responsible person as should have been determined by the trial judge as a matter of law to entitle the defendant to a directed verdict in his favor, or whether the case was properly submitted to the jury for its determination. In the *Salisbury* case it was strenuously urged by counsel for the defendant that the act of the defendant's minor son in shooting the plaintiff was an independent and wilful act intervening between the negligence of the father (defendant) and the damage to the plaintiff for which the defendant could not be held responsible as a matter of law. After stating the evidence in that case very fully, this court said (p. 39): "The case was submitted to the jury in a short but clear charge, in which the jury was instructed in substance that the defendant was not liable for his son's negligence merely because he was the father of the boy who did the shooting; but that the father was responsible only for his own negligence, if in fact the jury found that he was negligent in leaving the gun where the son could find it and use it, or in giving the gun to his son to use, and if the son was not of sufficient age, experience, and discretion to be intrusted with a gun. The whole question whether the father was negligent and whether his negligence caused the injury to the plaintiff was fairly left to the jury." This court then gave careful consideration to the authorities, particularly to *Sullivan* v. *Creed* (1903), 2 Ir. K. B. D. (1904) 317, which was very much in point and was reviewed at length, wherein the most elaborate consideration was given to the question whether, in a case involving the negligent leaving of a loaded gun where it was likely to be found and discharged by a minor to the injury of others, the court should leave to the jury the determination of the respon-

sibility of the owner of the gun, and whether the taking and discharge of the gun by the minor was to be regarded as the natural and probable result of the defendant's negligence which the defendant ought to have foreseen. It was determined that in such a case the question was for the jury. And so in the *Salisbury* case, after further consideration of many other cases supporting the same doctrine as in *Sullivan* v. *Creed*, this court held that the question of the defendant's liability was properly left to the jury.

We see no difference in principle between the *Salisbury* case and the case at bar. In the case at bar, we held in our former opinion (39 R. I. p. 136), "that it is actionable negligence to leave bombs or other explosives in a position where they are liable to be found and exploded by children to their injury," citing cases. The evidence reduced to essential statement shows that the defendants did leave the bomb in question in a yard of a tenement house where children were likely to play and did in fact play; that three children were playing in their own yard; that one child four or five years old, found it in the yard and brought it to the plaintiff who was about six and one-half years old and another boy (Hyscka) who was about seven years old; that it was round, bigger than a baseball, or about the size of a cocoanut; that they played with it; that it had a "string" (or fuse) hanging out of it; that while the plaintiff was holding it in his hands, the boy of seven years lighted a match and therewith, or with a piece of paper lighted by the match, ignited the bomb, and it exploded to the severe injury of the plaintiff. It also appears from the plaintiff's testimony that he had never seen such a thing before, that he did not know what it was, that the boy (Hyscka) who lighted it told him "it would show stars;" that it would not make any noise; that Hyscka lighted the "string," and the explosion occurred. Hyscka testified substantially to the same effect, except that he said he thought "it would make a little noise;" and it also appeared that they had seen small firecrackers set off, but no other kind of fireworks. It may be inferred from

this testimony that the two boys Sroka and Hyscka, having seen small firecrackers lighted, and seeing the "string" (or fuse) hanging out of it, knew just enough to suppose that the "string" (or fuse) was intended to be lighted, but were totally ignorant of the effect which would be produced.

Defendants seem to claim that, from this testimony, the trial judge should have found as a matter of law that the plaintiff and Hyscka "showed sufficient appreciation of the situation and sufficient intelligence to charge them with notice that they were dealing with a dangerous instrumentality," (defendants' brief, p. 5), and so, that the trial judge should have directed the jury to return a verdict for the defendants on the ground that "the chain of causation was broken."

We find no merit in this contention. It was the duty of the trial judge to submit the question to the jury. In his charge, after saying that the jury must first find that this bomb came from Goff's Lot through the negligence of the defendants, the judge goes on to say: "If you find that it was, then there is another question for you to consider, whether or not the negligence of the Providence Fireworks Company in propelling this bomb and allowing it to remain where it could be found by the children, whether or not that negligence was interrupted by the act of another person of sufficient age and intelligence to understand the dangerous nature of this article so that in the law we might consider that the negligence of the Providence Fireworks Company had been broken off and the negligence of another responsible person, a person of sufficient intelligence, had entered in, making his negligence the proximate cause of the accident" . . . .; and later, the judge said, in discussing the boy who lighted it, Domenic Hyscka: "If he was a person of sufficient intelligence to appreciate the danger and did know that applying fire to this article that has been described as a bomb would cause an explosion likely to injure persons, if he or John Sroka or either of them knew that fact, why then the proximate cause of the accident would be their

negligence," and goes on and says that in such case the negligence of such one would be the proximate cause of the injury and the defendants would not be liable.

It may be here noted that the case of *Salisbury* v. *Crudale* is not cited on either of the briefs filed by counsel in this case; it is assumed that this was overlooked by the counsel on account of the unfortunate delay in the printing of our official reports or the advance sheets thereof; and that it did not come to the notice of counsel that the opinion appeared in 102 Atl. 731 (No. 15, February 14, 1918).

The consideration given in that case, to substantially the same question as is here raised by the defendants and its decision in favor of the plaintiff, in our judgment renders it unnecessary to further discuss the question now raised, or to review the numerous authorities cited on the briefs.

We find in the plaintiff's brief numerous cases cited, of a similar character to the case at bar, involving injuries to minors by explosives negligently left by defendants in a position where they were liable to be found and exploded by children to their injury, and where such explosion occurred and injury resulted. In some of them, the explosion was caused by act of the minor plaintiff himself: *Makins* v. *Piggott et al*, 29 Can. S. C. 188; *Mattson* v. *Minn. &c. R. R. Co.*, 95 Minn. 477; *Wells* v. *Gallagher*, 144 Ala. 363; *Akin* v. *Bradley Eng. &c. Co.* 14 L. R. A. (N. S.) 586; *Barnett* v. *Cliffside Mills*, 167 N. C. 576; *Mathis* v. *Granger Brick &c. Co.*, 85 Wash. 634; *Clark* v. *DuPont Powder Co.*, 94 Kan. 268; *Powers* v. *Harlow*, 53 Mich. 507; *Eckart* v. *Kiel*, 123 Minn. 114; *Davis* v. *Wenatchee*, 86 Wash. 13; *U. S. Nat. Gas Co.* v. *Hicks*, 119 S. W. 166 (Ky.); in other cases the explosion was caused by act of a minor other than the plaintiff; *Harriman* v. *Pittsburg &c. R. Co.*, 45 Ohio St. 11; *Loughlin* v. *Penn. R. R. Co.*, 240 Pa. St. 174; *Nelson* v. *McLellan*, 31 Wash. 208; *Folsom-Morris Coal Mining Co.* v. *DeVork*, 160 Pac. 64.

In most of the cases above cited it was expressly held, and in a few of them it was conceded, that the question of

the contributory negligence of the infant plaintiff or of the nature of the act of the infant third person causing the explosion and whether in either case such act was the proximate cause of the injury or was merely an act which should have been foreseen and guarded against by the defendant as being "the natural or probable result of the original negligence" were questions of fact to be submitted to the jury.

All of the cases cited on behalf of the defendants in support of their contention have been carefully examined; we do not find any of them to be of controlling importance upon the question raised in the case at bar. The case of *Mahogany* v. *Ward, supra,* has already been referred to; so far as it refers to the rule to be applied in cases analogous to the case at bar, it is not opposed to our decision.

The case of *Afflick* v. *Bates,* 21 R. I. 281, does not support the defendants' contention. It appears upon examination of the papers in that case that it was tried, without a jury, before a single judge (jury trial not claimed); upon all the evidence the trial judge held that the defendant was not shown to be guilty of negligence in leaving explosive dynamite caps tied up in a box and placed in a tool chest, which stood 40 feet from the highway upon private land; there was and could have been no question raised in that case whether the facts should be submitted to a jury; furthermore, the boy (not the plaintiff) who exploded the cap, was fourteen years of age and not entitled to the presumption of ignorance of the quality of his acts, to which the plaintiff and his companions, six and one-half years and seven years of age are entitled; (see *U. S. Nat. Gas Co.* v. *Hicks,* 119 S. W. 166 (Ky.) see also *State* v. *McDonald,* 14 R. I. 270, 272); there was evidence before the trial judge as to the capacity of the fourteen year old boy to understand the nature of his act in exploding the cap, from which the trial judge was inclined, as his decision shows, to infer that he was a responsible agent and that his act was the proximate cause of the injury to the plaintiff; the appellate division did so find

upon a review of the evidence upon a motion for new trial. This case is far from being an authority for the defendants' contention that the case at bar should have been taken from the jury. On the contrary, it appears to us, that if the parties in *Afflick* v. *Bates,* had not omitted to claim a jury trial, as was their right if they saw fit to claim it, the facts would have had to be submitted to the jury, under proper instructions, both as to the negligence of the defendant and as to the question of proximate cause, based upon the intelligence and knowledge or lack thereof on the part of the fourteen years old boy.

We do not need to review the other cases cited on behalf of defendant. They all differ materially from the case at bar both as to facts and as to the *ratio decidendi.* In none of them is it pointedly held that in cases of this character, relating to the question of proximate cause such as is here involved, that question should be taken from the jury. On the contrary some of them hold otherwise and in most of them the precise question is not raised. In several of them it was held, upon the evidence, that the injury which the plaintiff suffered was not the natural or probable result of the defendants' negligence, not such as should have been foreseen by defendant; in some of them the verdict was set aside for want of proper instruction to the jury.

Upon the whole case, and in view of the authorities cited, this court is of the opinion that the case was properly submitted to the jury, and we find no error upon the point submitted.

The defendants' exceptions are overruled and the case is remitted to the Superior Court sitting in Providence, with direction to enter its judgment upon the verdict for plaintiff.

*John P. Beagan, John J. Richards,* for plaintiff.

*Mumford, Huddy & Emerson, Fitzgerald & Higgins, James G. Connolly, Thomas P. Corcoran,* for defendants.